UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re | Chapter 7 |
| Chester J. Bungert; and<br>Josephine Bungert,<br>　　　　Debtors. | Case No.: 03-36299-svk |

| | |
|---|---|
| Capital One Bank,<br>　　　　Plaintiff,<br>v.<br>Chester J. Bungert; and<br>Josephine Bungert,<br>　　　　Defendants. | Adv. No.: 04-2039 |

MEMORANDUM DECISION

The issue is whether the Debtors' credit card debt to Capital One Bank ("Capital One") is discharged in bankruptcy. Capital One properly filed and served a nondischargeability complaint on the Debtors and their attorney, but the Debtors did not answer. Capital One then moved for default judgment, supported by the affirmation of its attorney.

**JURISDICTION AND VENUE**

The Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) (2004). Venue is proper under 28 U.S.C. §§ 1408, 1409. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I).

**FACTS**

According to the complaint and affirmation of Heath S. Berger, one of Capital One's lawyers, between May 9, 2003 and September 19, 2003, the Debtors used their Capital One

credit card for twenty-three purchases totaling $1,771.41 and received twenty cash advances in the amount of $8,035.00, for a total of $9,806.41.  The exhibit attached to the Complaint shows that many of the purchases were made at grocery stores and pharmacies.  The cash advances within 60 days of the bankruptcy petition totaled $2,385, including a check purchased on August 15, 2003 for $1,000.  There is no evidence in the record of how the Debtors used the cash advances.  The Debtors made payments of $100 each on June 4, 2003, July 4, 2003, and July 25, 2003, and filed a chapter 7 bankruptcy petition on October 10, 2003.

Capital One alleged that each time they used the credit card, the Debtors made an implied representation of an intent to repay the amounts they charged.  Further, Capital One stated "upon information and belief" that the Debtors knew that the alleged representations were false and were made to induce Capital One to continue to extend credit to the Debtors.  Capital One also alleged "upon information and belief" that the Debtors purchased "luxury good(s) and/or service(s), including but not limited to jewelry, gifts, furniture and home furnishings," and used cash advances to pay other debts and expenses.

The complaint alleged that Capital One justifiably relied on the representations, continued to extend credit to the Debtors, and sustained damages in the amount of $12,336.70.  Finally the complaint stated that the Debtors were insolvent at the time they incurred the charges, and incurred the charges with a reckless disregard of whether they could repay the debt to the Capital One.  This is the extent of the record; there are no transcripts of the § 341 meeting of creditors, evidence of when the Debtors first met with their bankruptcy attorney, nor any other details supporting Capital One's allegations.

# DISCUSSION

I. **Plaintiff must prove a *prima facie* case for nondischargeability in order to succeed on a Motion for Default Judgment.**

A default by a defendant does not automatically entitle a plaintiff to entry of a default judgment. *Mega Marts, Inc. v. Trevisan (In re Trevisan)*, 300 B.R. 708, 713 (Bankr. E.D. Wis. 2003). *See* Fed. R. Bankr. P. 7055 (making Rule 55 applicable to bankruptcy adversary proceedings). In *Trevisan*, a nondischargeability action involving worthless checks, this Court held that a plaintiff must prove a *prima facie* case under Bankruptcy Code § 523(a)(2)(A) in order to succeed on a motion for default judgment. *Trevisan*, 300 B.R. at 715 (noting the risk that the plaintiff obtained entry of default because of the debtor's inability to defend against the nondischargeability action). *Trevisan* held that the plaintiff did not prove its case, and denied the motion for default judgment. *Id*. at 719.

II. **Various approaches have been used to analyze nondischargeability actions involving credit cards.**

Bankruptcy Code § 523(a)(2)(A) provides in pertinent part:

> A discharge under section 727. . . of this title does not discharge an individual debtor from any debt-- for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-- false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition.

11 U.S.C. § 523(a)(2)(A) (2004).

Historically, courts have developed several approaches when applying this provision to credit card cases. *Chevy Chase Bank v. Briese (In re Briese)*, 196 B.R. 440, 446 (Bankr. W.D. Wis. 1996); *Chase Manhattan Bank v. Murphy (In re Murphy)*, 190 B.R. 327, 331 (Bankr. N.D. Ill. 1995). These include the "assumption of the risk," "totality of the circumstances" and "implied representation" tests. *Briese*, 196 B.R. at 446-47.

3

The "assumption of the risk" view espoused in *First Nat'l. Bank of Mobile v. Roddenbery*, 701 F.2d 927, 932 (11th Cir. 1983), evaluates the reasonableness of the issuer's decision to allow the debtor to use the credit card in the face of circumstances that suggest abuse of the privilege or imminent default. Courts adopting this test are reluctant to deny dischargeability of credit card obligations incurred before the issuer revoked the card. *Briese,* 196 B.R. at 446. These courts often are critical of the credit assessment and card issuance polices of the issuer, and hold the issuer "equally, if not more, responsible than the debtor for the debtor's predicament." Larry Bates, *Excepting Credit Card Debt from Discharge in Bankruptcy: Why Fraud Can't Mean What the Courts Want it to Mean*, 78 N.D. L. Rev. 23, 36 (2002).

Another approach is the "totality of circumstances" approach of *In re Dougherty*, 84 B.R. 653, 657 (9th Cir. BAP 1988). *Briese*, 196 B.R. at 447; *See* David F. Snow, *The Dischargeability of Credit Card Debt: New Developments for a New Direction*, 72 Am. Bankr. L.J. 63, 72 (1998). Under this test, the court applies a list of factors to the debtor's situation to see if the credit card debt should be discharged. *Briese*, 196 B.R. at 447. A modification of this approach was incorporated into a "misrepresentation/reliance" analysis by the Ninth Circuit Court of Appeals in *Citibank (South Dakota), N.A. v. Eashai*, 87 F.3d 1082, 1088 (9th Cir. 1996). Within the "misrepresentation/reliance" scheme, the fact-driven "circumstances" approach is used to determine the debtor's fraudulent intent. Snow, *supra*, at 72. *But see Briese*, 196 B.R. at 452 (declining to apply the factors because, while "non-exclusive," they may nonetheless limit a court's investigation).

The "misrepresentation/reliance" test is now the most common view. Bates*, supra*, at 27 n.28. The test, depending on the circuit, incorporates the elements of common law fraud: 1) the debtor made a representation; 2) the debtor knew the representation was false; 3) the representation was made with the intent to deceive; 4) the creditor relied on the representation;

4

and 5) the creditor suffered an injury or loss. *E.g., Rembert v. AT&T (In re Rembert)*, 141 F.3d 277, 280-81 (6th Cir. 1998). *See* Snow, *supra*, at 67-68.

One difficulty with application of the misrepresentation/reliance test is that in a credit card situation, a debtor makes no express representation to the issuer of the card at the time of the card's use. The debtor is usually dealing with a third party (salesperson), or no person at all (cash machine); rarely if ever the issuer. *Murphy*, 190 B.R. at 331; Bates, *supra*, at 29.

In order to circumvent the problem of the lack of face-to-face contact and any actual representation being made, courts have developed the legal fiction of an "implied representation" for credit card transactions. Snow, *supra*, at 74. Early decisions held that the use of a credit card carried implied representations of *both* the ability and intent to repay the issuer. *Bank One Columbus, N.A. v. McDonald (In re McDonald)*, 177 B.R. 212, 216 (Bankr. E.D. Pa. 1994); *H.C. Prange Co. v. Schnore (In re Schnore)*, 13 B.R. 249, 254 (Bankr. W.D. Wis. 1981). However, the implied representation of the *ability* to repay was eliminated in light of the language of Bankruptcy Code § 523(a)(2)(A) making debts nondischargeable "other than a statement respecting the debtor's or an insider's financial condition." *See, e.g., Anastas v. Am. Savings Bank (In re Anastas)*, 94 F.3d 1280, 1285 (9th Cir. 1996) (emphasizing the implied representation is only of the intent to repay, not ability to repay).

Currently, the "implied representation" analysis applies the fiction that with each use of the credit card, the debtor represents an intent to repay. *Id.*; *AT&T Universal Card Services v. Mercer*, 246 F.3d 391, 406 (5th Cir. 2001); *Rembert*, 141 F.3d at 281; *AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326, 334 (Bankr. W.D. Mo. 1997).

Some courts are critical of the "implied representation" theory. *AT&T Universal Card Services v. Alvi (In re Alvi)*, 191 B.R. 724, 731-32 (Bankr. N.D. Ill. 1996); *Mercer*, 246 F.3d at 425-29 (dissenting opinion). Three arguments are made against application of the legal fiction

5

employed in the theory. First, using a credit card, like issuing a check, is not a representation at all. *Alvi*, 191 B.R. at 732. According to the Supreme Court, checks are not factual assertions, and therefore cannot be categorized as "true" or "false." *Williams v. U.S.*, 458 U.S. 279, 284 (1982). From this, the *Alvi* court determined that the similarities between credit card use and the issuance of a check "make it illogical to conclude that the use of a credit card in an ordinary credit transaction necessarily involves a representation." 191 B.R. at 732.

Second, no representation was made at the time of the transaction, because the entire agreement between the debtor and the credit card issuer was made when the card was issued. *Mercer*, 246 F.3d at 426. According to this argument, the credit card agreement delineates the terms and conditions of card use, and therefore embodies the debtor's intent to repay the credit extended. *Id*. As the dissent in *Mercer* stated:

> So what occurred when [the debtor] used the card... was simply the transfer of funds against the credit line previously established and on the terms and conditions previously established. No new loan agreement was made, and no new terms were agreed to. Hence, no new representations were made.

*Id.* at 427.

Lastly, from a policy standpoint, to infer an "implied representation" in a credit card transaction runs counter to the fundamental principle of bankruptcy law that exceptions to discharge must be strictly construed in favor of the debtor. *Id.* at 425; *Alvi*, 191 B.R. at 732 n.15. By inferring a representation is made when a credit card is used, the creditor is effectively "relieved of the obligation of proving that a false representation was made." *Mercer*, 246 F.3d at 426.

Avoiding the fray surrounding the appropriateness of the "misrepresentation/reliance" and "implied representation" theories for § 523(a)(2)(A) nondischargeability actions, the Seventh Circuit offered an analysis of "actual fraud" that circumvents the shortcomings of the

6

other approaches.  *McClellan v. Cantrell*, 217 F.3d 890, 892-93 (7th Cir. 2000).  In *McClellan,* the court noted that many courts and commentators assume that fraud requires proof of a misrepresentation.  217 F.3d at 892.  However, the language of § 523(a)(2)(A) is not limited to "fraudulent misrepresentations," but also includes "actual fraud."  *Id.* at 893 ("... by distinguishing between 'false representation' and 'actual fraud,' the statute makes clear that actual fraud is broader than misrepresentation.").  In *McClellan*, the court defined "actual fraud" as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another."  *Id.*  *See also* 4 Alan N. Resnick and Henry J. Sommer, *Collier on Bankruptcy 15th Rev. Ed.* ¶ 523.08[1][e] (2004).

One commentator noted that *McClellan's* "actual fraud" analysis "may prompt a new and more realistic analysis of credit card abuse under § 523(a)(2)(A)."  David F. Snow, *Cheers for the Common Law?  A Response*, 74 Am. Bankr. L.J. 161, 171 (2000).  It appears that *McClellan* has had that effect, at least in the Sixth and Seventh Circuits.  *See, e.g., Sears, Roebuck and Co. v. Green (In re Green)*, 296 B.R. 173, 179 (Bankr. C.D. Ill. 2003) (applying *McClellan* to a credit card nondischargeability action under "actual fraud"); *Citibank (South Dakota), N.A. v. Brobsten (In re Brobsten)*, 2001 WL 34076352, at *3-4 (Bankr. C.D. Ill. Nov. 20, 2001) (same); *Fleet Credit Card Services, L.P. v. Kendrick (In re Kendrick)*, 2004 Bankr. LEXIS 844, at *5-6 (Bankr. N.D. Ga. June 24, 2004); *Mellon Bank, N.A. v. Vitanovich, Jr. (In re Vitanovich)*, 259 B.R. 873, 876-77 (B.A.P. 6th Cir. 2001) (noting that *McClellan* "announces a better approach to [credit card nondischargeability cases] by analyzing the use of the term 'actual fraud' in 11 U.S.C. § 523(a)(2)(A)").

Applying the *McClellan* test in *Brobsten*, Bankruptcy Judge Perkins stated: "This Court is of the opinion that a credit card issuer may establish actual fraud for purposes of Section 523(a)(2)(A) by proving that the debtor's use of the card was made with an actual, subjective

intent not to repay the issuer by discharging the debt in bankruptcy or otherwise." 2001 WL 34076352, at *4. Since debtors rarely admit to an intent not to repay, the plaintiff must resort to circumstantial evidence to prove the debtor's state of mind. Judge Perkins adopted the reasoning of *In re Alvi*, in which the Bankruptcy Court for the Northern District of Illinois listed the twelve factors used in determining whether a debtor intended to repay the credit card obligations:

    1. The length of time between charges made and bankruptcy filing.

    2. Whether an attorney was consulted regarding bankruptcy before the charges were made.

    3. The number of charges made.

    4. The amount of the charges.

    5. The debtor's financial condition when the charges were made.

    6. Whether the charges exceeded the credit limit of the card.

    7. Whether multiple charges were made on the same day.

    8. Whether the debtor was employed.

    9. The debtor's prospects for employment.

    10. The debtor's financial sophistication.

    11. Sudden changes in the debtor's buying habits.

    12. Whether the purchases were for luxuries or necessities.

*Id.* at *4 (citing *Alvi*, 191 B.R. at 733).

**III.    Applying the approaches to the case at bar.**

    Capital One has relied upon the implied representation/reliance theory in its complaint and affirmation in support of its Motion for Default Judgment. However, even if Capital One had employed the less strenuous test suggested by *McClellan*, Capital One has not met its burden of proof by presenting evidence of the Debtors' fraudulent intent not to repay the credit card

debt. *See AT&T Universal Card Services, Corp. v. Sziel (In re Sziel)*, 206 B.R. 490, 493-94 (Bankr. N.D. Ill. 1997) (denying motion for default judgment and dismissing complaint for lack of evidence of fraud). As in *Trevisan*, Capital One has relied on the unsupported allegations in its complaint and a declaration of its counsel, drawing sweeping legal conclusions, but offering no evidence other than a list of the credit card charges and cash advances on the card.

Moreover, Capital One has pled certain allegations, including that the debtors purchased luxury goods with the credit card and knew that their representations were false, "upon information and belief." Such statements are totally insufficient to sustain a *prima facie* case of fraud. Judge Posner called such allegations,

> clearly improper locution under the current federal rules, which impose (in the amended Rule 11) a duty of reasonable precomplaint inquiry not satisfied by rumor or hunch. . . [T]he duty to plead the circumstances constituting fraud with particularity could not be fulfilled by pleading those circumstances on "information and belief" unless they were facts inaccessible to the plaintiff in which event he had to plead the grounds for his suspicions.

*Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683-84 (7th Cir. 1992) (citations omitted).

Although Capital One's unsupported allegations of fraud have gone unchallenged by the Debtors, due to the conclusory nature of the claims, this Court declines to accept them as admissions of the Debtors. In this respect, the Court heartily agrees with *Sziel, supra,* and *FDS Nat'l Bank v. Alam (In re Alam)*, 2004 Bankr. LEXIS 843 at *16 (Bankr. N.D. Ga. 2004), in which that court stated:

> The Court in the exercise of its discretion will not, however, enter default judgment in a nondischargeability proceeding alleging actual fraud based on technical compliance with notice pleading rules. Unless there are specific factual allegations from which actual, subjective fraudulent intent may be inferred or Plaintiff produces evidence at a hearing that proves such intent, entry of default judgment based on actual fraud is not appropriate.

*See also In re Savage*, 303 B.R. 766, 772-73 (Bankr. D. Md. 2003) (refusing to grant summary judgment based on unanswered Requests for Admissions).

Since, in this case, Capital One has not provided specific factual allegations about the Debtors' conduct, and has provided no evidence of fraud, other than a list of the charges and cash advances, which do not alone establish the requisite fraudulent intent on the Debtors' part, Capital One has not satisfied its prima facie case of nondischargeability under Bankruptcy Code § 523(a)(2)(A).

## CONCLUSION

Capital One's Motion for Default Judgment is denied, and its Complaint is dismissed for failure to state a cause of action.

Dated: September 10, 2004

By the Court:

Susan V. Kelley
U.S. Bankruptcy Judge